Matter of Wolfe v Ames Dept. Store, Inc. (2018 NY Slip Op 02224)





Matter of Wolfe v Ames Dept. Store, Inc.


2018 NY Slip Op 02224


Decided on March 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 29, 2018

524606

[*1]In the Matter of the Claim of GERALDINE WOLFE, Appellant,
v
AMES DEPT. STORE, INC., Respondent, and SPECIAL FUNDS CONSERVATION COMMITTEE, Respondent. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: February 16, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Clark and Rumsey, JJ.


Buckley, Mendleson, Criscione & Quinn, PC, Albany (Rebeccah W. Kane of counsel), for appellant.
Steven M. Licht, Special Funds Conservation Committee, New York City (Jill B. Singer of counsel), for Special Funds Conservation Committee, respondent.


Clark, J.

MEMORANDUM AND ORDER
Appeal from a decision of the Workers' Compensation Board, filed May 11, 2016, which ruled, among other things, that claimant sustained a temporary marked partial disability rather
than a permanent total disability.
Claimant suffered a work-related accident in April 2002, and her resulting workers' compensation claim was established for injuries to her right shoulder, neck and upper back in May 2003. In 2009, the employer's workers' compensation carrier was discharged and the claim became the responsibility of the Special Funds Conservation Committee. Due to her causally-related injuries, claimant ceased working altogether in November 2011.
Additional proceedings on the question of permanency ensued, after which a Workers' [*2]Compensation Law Judge (hereinafter WCLJ) issued an amended reserved decision in June 2014 finding that claimant was permanently totally disabled as a result of her 2002 injuries and that, as a result, a defense of labor market attachment did not apply. Upon Special Funds' application for review, the Workers' Compensation Board, in February 2015, held the WCLJ's decision in abeyance and referred claimant for evaluation by an impartial specialist — with a directive that such specialist render an expert opinion on the issues of permanency and whether there was support for a finding of permanent total disability.
Consistent with the Board's decision, claimant was evaluated by Paul Salerno, a physiatrist, in October 2015, who concluded that it was premature to classify claimant as permanently totally disabled and that claimant suffered from a marked medical impairment (85%). In a May 2016 decision, the Board agreed with Salerno's assessment — finding that claimant suffers from a temporary partial disability, deeming it premature to classify claimant with a permanent disability and directing that claimant undergo an MRI and nerve conduction study. In light of its finding of a partial disability and claimant's testimony as to her efforts to find employment or pursue vocational training, the Board further concluded that claimant was not attached to the labor market as of December 16, 2013. Claimant now appeals.
We affirm. "To establish a total disability, a claimant must demonstrate that he or she is totally disabled and unable to engage in any gainful employment" (Matter of Wohlfeil v Sharel Ventures, LLC, 155 AD3d 1264, 1266 [2017] [internal quotation marks and citations omitted]). Confronted with the conflicting medical opinions of Neal Baillargeon, claimant's physician, and John Buckner, an orthopedist who conducted an independent medical examination of claimant, the Board sought the opinion of Salerno, an impartial specialist. Based upon his physical examination of claimant and a review of her various medical records, Salerno diagnosed claimant with "chronic cervical spine pain secondary to degenerative changes with left upper extremity neurologic symptoms" and determined that she suffered a class 4 impairment under table 11.1 of the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity (hereinafter the guidelines). Salerno further found, however, that because claimant's last cervical MRI, "which did not identify correlative imaging findings," was conducted in 2012, it "would be premature to determine the severity rating at [that] time." Although Salerno did not believe that claimant should be classified as permanently totally disabled at that juncture, he did find that she suffered from a marked medical impairment (85%) that was "most likely permanent." During his subsequent deposition testimony, Salerno reiterated that further testing was required before he could render an opinion as to permanency — noting that the fact that claimant drove nearly two hours for her evaluation was suggestive that she was capable of performing some type of work.
In our view, Salerno's opinion as to the need for further testing and the Board's subsequent adoption thereof, as well as its finding that claimant suffers from a partial disability, is supported by substantial evidence in the record and, as such, will not be disturbed. Although claimant disputes the need for further testing and argues that "correlative imaging findings" are not an appropriate consideration under the guidelines, we disagree. Baillargeon opined that claimant suffered a severity ranking of B under the guidelines, which would result in a class 3 medical impairment, while Salerno concluded that claimant suffered from a class 4 medical impairment but declined to assign a severity ranking without additional testing. Under either classification of medical impairment, "correlative imaging
findings" are an appropriate consideration under the guidelines (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 51-52, table 11.1 [2012]). We further note that claimant's present assertion — that she believed that she was totally disabled as of November 2011 — is belied by, among other things, her subsequent search for employment in 2013.
In light of the Board's conclusion as to claimant's documented degree of disability, it was entirely proper for the Board to consider whether claimant remained attached to the labor [*3]market (see e.g. Matter of McKinney v United States Roofing Corp., 150 AD3d 1377, 1378 [2017]). "[W]hether a claimant has demonstrated an attachment to the labor market is a factual issue for the Board, and its decision in this regard will be upheld if supported by substantial evidence" (Matter of King v Riccelli Enters., 156 AD3d 1095, 1096 [2017]; see Matter of Pravato v Town of Huntington, 144 AD3d 1354, 1356 [2016]). Given claimant's testimony at the December 2013 hearing, at which time she acknowledged that her employment search efforts ceased in August 2013 and that she did not avail herself of any educational or retraining programs, substantial evidence supports the Board's finding that claimant was not attached to the labor market as of December 16, 2013 (see Matter of Pravato v Town of Huntington, 144 AD3d at 1356-1357; Matter of Hare v Champion Intl., 50 AD3d 1254, 1255 [2008], lv dismissed 11 NY3d 863 [2008]). Claimant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
McCarthy, J.P., Egan Jr., Devine and Rumsey, JJ., concur.
ORDERED that the decision is affirmed, without costs.